UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **DANIEL FREEMAN,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL NO. 1-20-CV-589-LY** |
| **WYNDEN STARK, LLC D/B/A GQR** | § | |
| **GLOBAL MARKETS,** | § | |
| *Defendant* | § | |

**O R D E R**

Before the Court are Plaintiff's Motion to Compel Discovery, filed December 23, 2020 (Dkt. 13); Defendant's Response to Plaintiff's Motion to Compel, filed December 30, 2020 (Dkt. 15); and Plaintiff's Reply, filed January 6, 2021 (Dkt. 18). On December 28, 2020, the District Court referred the Motion to the undersigned Magistrate Judge for resolution, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.   Background

Plaintiff Daniel Freeman, a North Carolina citizen, brings this jury service retaliation suit against his former employer, Defendant Wynden Stark, LLC d/b/a GQR Global Markets, a foreign limited liability company incorporated in the United Kingdom. Plaintiff alleges that in early January 2020, Defendant hired Plaintiff as "Executive Vice President to manage its Austin, Texas operation finding and placing nurses with hospitals." Dkt. 1-5 at ¶ 5. Plaintiff, who was living in North Carolina, planned to move to Austin and officially start his new job on January 31, 2020.

Plaintiff alleges that on January 15, 2020, he received a jury summons to appear as a prospective juror in a North Carolina state court on February 17, 2020. Plaintiff alleges that after

1

he informed Defendant that he had been selected as a juror in a three-week-long trial, Defendant "expressed concern for Mr. Freeman's jury service requirements and asked Mr. Freeman if he was able to get out of jury service." *Id.* ¶ 8. Plaintiff further contends that Defendant demanded proof that Plaintiff actually was serving on the jury. Plaintiff alleges that on February 28, 2020, Defendant informed him that it would no longer pay Plaintiff while he was serving on jury duty and directed Plaintiff to stop working.

Plaintiff alleges that on March 18, 2020, he notified Defendant that the North Carolina state court had stayed the trial because of COVID-19, and that, therefore, he could return to work. Plaintiff contends that Defendant ignored Plaintiff and terminated his employment on March 26, 2020. Plaintiff alleges that Defendant informed him that he was "being laid off because of a downturn in work related to COVID-19." *Id.* ¶ 14. Plaintiff argues that Defendant's reason for his termination "is not believable because Mr. Freeman's job was to find nurses and place them in employment at hospitals, a need that increased dramatically during the COVID-19 crisis," and that "the timeline of events shows GQR's frustration at jury service and motivation to intimidate and terminate before the crisis." *Id.* ¶ 15.

On April 20, 2020, Plaintiff filed suit in state court, alleging retaliation, intimidation, and wrongful termination, in violation of the Texas Juror Reemployment Statute ("TJRS"), TEX. CIV. PRAC. & REM. CODE ANN. §§ 122.001-122002 (West 2019).[1] *Freeman v. Wynden Stark LLC*, No. D-1-GN-20-002206 (353rd Dist. Ct. Travis County, Tex. April 20, 2020). On June 3, 2020,

---

[1] The statute provides that: "An employer may not discharge, threaten to discharge, intimidate, or coerce any permanent employee because the employee serves as a juror or grand juror, or for the employee's attendance or scheduled attendance in connection with the service, in any court in the United States." TEX. CIV. PRAC. & REM. CODE ANN. § 122.001(a) (West 2019).

Defendant removed the case to federal court on the basis of diversity jurisdiction, pursuant to 28 U.S.C.§ 1441(a).

After Defendant objected to several of Plaintiff's discovery requests, Plaintiff moved to compel Defendant to respond to Plaintiff's First Set of Interrogatories Nos. 5, 6 and 7, and Requests for Production Nos. 2, 3, 7, 8, 14, 21-26, 28, 29, 36, and 37.[2] Defendant continues to object to most of these requests but has agreed to respond to Requests for Production Nos. 7, 8, 14, and 36, and the Motion to Compel is now moot as to those requests. The Court makes the following rulings with regard to the remaining discovery requests.

## II.   Legal Standards

Federal Rule of Civil Procedure 26(b)(1) provides that: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The scope of discovery is broad. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (quoting *Wiwa v. Royal Dutch Petrol.* Co., 392 F.3d 812, 820 (5th Cir. 2004)). When a party withholds information otherwise discoverable by claiming that the information is privileged, the party must: "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not

---

[2] Local Rule CV-7(i) provides that a court may deny a nondispositive motion "unless the movant advises the court within the body of the motion that counsel for the parties have first conferred in a good-faith attempt to resolve the matter by agreement and, further, certifies the specific reason that no agreement could be made." Although Plaintiff's counsel included a certificate of conference, the certificate merely states that "counsel for Plaintiff has spoken with counsel for Defendant by telephone and also communicated with Defendant's counsel by email on several occasions beginning on September 17, 2020." Dkt 13 at 17. Clearly, this fails to comply with Local Rule CV-7(i). The Court could deny the Motion on this basis alone. In the interest of efficiency, the Court will resolve this motion, but reminds Plaintiff's counsel that he must confer in good faith before filing any discovery motions. Any future non-dispositive motions filed by Plaintiff that do not comply with Local Rule CV-7(i) will be denied.

produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A).

After a party has attempted in good faith to obtain discovery without court action, that party may move for an order compelling disclosure or discovery. FED. R. CIV. P. 37(a)(1). The party resisting discovery must show how each discovery request is not relevant or otherwise objectionable. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). "The Court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003). "A trial court enjoys wide discretion in determining the scope and effect of discovery." *Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982).

### III.   Analysis

#### A.  Defendant's Hiring History

Interrogatory No. 5 and Request for Production No. 21 ask Defendant to "identify all persons hired by Defendant from January 1, 2020, to present." Defendant objects to these requests as overly broad and unduly burdensome "because Defendant's business has approximately 11 divisions and 27 specialties, with employees in the United States, the United Kingdom and Australia." Dkt. 15 at 3. Plaintiff argues that this information is relevant to the issue of pretext because if Defendant actually increased its hiring during this time, its purported reason for terminating Plaintiff was false and pretextual.

The Court finds these requests to be overly broad because they request information on "all persons" hired by Defendant. As noted, Plaintiff was hired as an Executive Vice President to

oversee Defendant's Austin, Texas operations. Thus, only employees who were hired to perform similar positions and job duties in similar divisions would be relevant to Plaintiff's claims.

Interrogatory No. 6 and Request for Production No. 22 ask Defendant "to identify all persons hired by Defendant from January 1, 2020, to present for Health Care Recruitment and Sales." Interrogatory No. 7 and Request for Production No. 3 ask Defendant to "identify all persons hired by Defendant from January 1, 2020, to present in the Austin office for the Health Care Division." Defendant also objects to these requests on the grounds that they are overly broad and unduly burdensome in time and scope. While these requests are more narrowly tailored than Interrogatory No. 5, the Court finds that they are still overly broad because they are not limited to the hiring of employees at a similar level to Plaintiff and in similar divisions.

Accordingly, Plaintiff's Motion to Compel as to Interrogatories Nos. 5, 6, and 7, and Requests for Production 21, 22 and 23, is **DENIED**.

### B. Personnel Files

Request for Production No. 2 seeks:

> The personnel files and records for all persons listed in Defendant's answer to Interrogatory No. 2, including but not limited to all performance evaluations, peer reviews, compensation history, licensure records and actions, records of any awards or promotions earned, and records of any disciplinary actions. This request does not request medical information.

Although Plaintiff did not submit Interrogatory No. 2 or Defendant's response, Plaintiff contends that his request seeks the personnel files of the three individuals identified by Defendant who were involved in the decision to fire Plaintiff. Plaintiff argues that the personnel files are relevant to the issues of motive and pretext. Defendant objects to this request on the grounds that it is overly

broad, unduly burdensome, seeks irrelevant information, and violates the privacy interests of individuals who are not parties to this litigation.

The Court agrees that information contained in the personnel files of the decisionmakers pertinent to the reasons Plaintiff was terminated is relevant to Plaintiff's claims. But Plaintiff's request is not so limited. Request No. 2 seeks the personnel files and records of decisionmakers "including but not limited to all performance evaluations, peer reviews, compensation history, licensure records and actions, records of any awards or promotions earned, and records of any disciplinary actions," which clearly is overly broad. *See Beasley v. First Am. Real Estate Info. Servs., Inc.*, No. 3-04-CV-1059-B, 2005 WL 1017818, at *4 (N.D. Tex. Apr. 27, 2005) (finding that plaintiff was "not entitled to rummage through the personnel files of these employees in hopes of discovering information that might possibly be relevant to his claim"). Accordingly, the Court **DENIES** Plaintiff's Request No. 2 as overly broad.

Request for Production No. 3 seeks the personnel files of Plaintiff's replacements and comparators, "including but not limited to all performance evaluations, peer reviews, compensation history, licensure records and actions, records of any awards or promotions earned, and records of any disciplinary actions." Defendant argues that it has not hired, placed, or reassigned anyone to Plaintiff's former position "because Defendant changed the focus of its Healthcare business due to COVID-19 away from the permanent placement business, for which Plaintiff was hired, to temporary placement of frontline healthcare workers" Dkt. 15 at 6. Defendant, however, acknowledges that after it fired Plaintiff, it hired Shawn Dargusch as the Executive Vice President and head of its Austin office to lead the temporary placement of frontline healthcare workers. Dargusch could be construed as Plaintiff's replacement. Therefore,

information contained in Dargusch's personnel file which relate to his job duties is relevant to Plaintiff's claims of pretext.

Accordingly, the Court **GRANTS** Plaintiff's Motion with regard to Request for Production No. 3 seeking information contained in Dargusch's personnel file which relates to his job duties, but **DENIES** all other requests contained in Request for Production No. 3.

### C. Emails and Texts

Request for Production No. 24 seeks "[a]ll emails between Plaintiff and any representative of Defendant." Defendant objects to this request as overly broad and unduly burdensome. Request for Production No. 25 seeks "[a]ll emails within Defendant's possession that mention or refer to Plaintiff." Request No. 28 seeks "[a]ny and all communications, including e-mails and text messages, either sent by or received by any representative of Defendant at any time since January 1, 2019, that refer to or mention Plaintiff." Request for Production No. 29 seeks "[a]ll documents and communications created or exchanged since January 1, 2019, between Defendant and any current or former employees of Defendant, that mention or refer to Plaintiff's employment with or termination from GQR."

The Court finds that emails, texts, and other communications between Plaintiff and Defendant may be relevant to Plaintiff's claims. Considering that Plaintiff worked for Defendant for only two months, the Court does not find the request overly burdensome. Accordingly, Plaintiff's Motion is **GRANTED** with regard to Requests for Production Nos. 24, 25, 28, and 29 as to any non-privileged communications and documents.

### D. Discrimination Complaints

Request for Production No. 26 seeks "[a]ll Complaints against Defendant that it unlawfully discriminates." Defendant objects that the request is overly broad, unduly burdensome, and seeks

irrelevant information. Plaintiff alleges that he was terminated because he took time off from work to serve on a jury in violation of the TJRS, not for any other reason. Therefore, the Court finds that this request seeks information irrelevant to Plaintiffs claims. Plaintiff's Motion to Compel as to Request for Production No. 26 is **DENIED**.

### E.  Financial Statement

Request for Production No. 37 seeks "Defendant's current financial statement." Defendant objects that this request is overly broad, unduly burdensome, and seeks irrelevant information. Plaintiff argues that Defendant's net worth is relevant to the issue of damages in this case. Specifically, Plaintiff contends that if he prevails at trial, the TJRS[3] "gives the factfinder discretion to award between one and five years' compensation," which "may be likened to punitive damages." Dkt. 13 at 16. While Defendant acknowledges that in a typical discrimination, a plaintiff is entitled to discover net worth if seeking punitive damages, Defendant argues that Plaintiff "has offered no caselaw" showing that it is entitled to punitive damages under the TJRS.

Defendant is correct that Plaintiff did not provide the Court with any caselaw to support its position. The Fifth Circuit, however, has held unequivocally that the TJRS allows the recovery of punitive damages by an employee terminated for serving as a juror. *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1277 (5th Cir. 1991) ("Under governing Texas interpretation, an employee terminated in violation of the TJRS is entitled, in an appropriate case, to punitive damages.") (interpreting prior version of § 122.002(a)).

---

[3] The damages provision provides in full: "A person who is injured because of a violation of this chapter is entitled to reinstatement to the person's former position and to damages in an amount not less than an amount equal to one year's compensation nor more than an amount equal to five years' compensation at the rate at which the person was compensated when summoned for jury or grand jury service." TEX. CIV. PRAC. & REM. CODE ANN. § 122.002(a) (West 2019).

Under Texas law, "in cases where punitive or exemplary damages may be awarded, parties may discover and offer evidence of a defendant's net worth." *Alvarez v. Aldi (Texas) LLC*, No. 3:13-CV-4122-L, 2014 WL 3624929, at *3 (N.D. Tex. July 22, 2014). Moreover, "a party seeking discovery of net-worth information need not satisfy any evidentiary prerequisite, such as making a prima facie showing of entitlement to punitive damages, before discovery of net worth is permitted." *In re Jacobs*, 300 S.W.3d 35, 40–41 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see also Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 137 & n.11 (E.D. Tex. 2003) (finding that under federal law, evidence of a defendant's financial worth is relevant and discoverable to a punitive damages claim). Based on the foregoing, the Court finds that Defendant's current financial statement is discoverable. Accordingly, Plaintiff's Motion to Compel is **GRANTED** as to Request for Production No. 37.

## IV.   Conclusion

Plaintiff's Motion to Compel Discovery (Dkt. 13) is **GRANTED IN PART** and **DENIED IN PART**. The Court **GRANTS** the Motion as to Plaintiff's Request for Production Nos. 3, 24, 25, 28, 29 and 37, as detailed above, and **DENIES** the Motion as to all other discovery requests.

It is **FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

**SIGNED** on January 15, 2021.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE